WALTER R. DYER *vs.* HERMENEGILDE TARDIF.

Penobscot County. Decided July 6, 1922. Action to recover damages for personal injuries received in a collision between the plaintiff's motorcycle and defendant's automobile. The plaintiff claims that as he was ascending, and near the summit of, a hill on the road from Augusta to Waterville, the defendant in his car came over the summit of the hill so close to the right hand side of the road where plaintiff was riding, that the automobile struck

the motorcycle on the left side, breaking the engine, and crushing the plaintiff's left leg so that amputation above the knee was necessary. The case is before us upon defendant's motion to set aside a verdict for plaintiff.

The plaintiff was the only witness called in his behalf as to the circumstances of the collision. If his version is substantially correct, the verdict was unquestionably justified.

The defendant's witnesses to the accident are himself, his son, and his son's wife who were occupants of his car. A car followed the defendant's car up the hill, but its occupants did not see the collision. The driver testifies that when he first saw Dyer, the latter was on his right hand side of the road "coming up right over the brow of the hill," and that the Tardif car had gone out of his sight down over the hill; that Dyer fell from his motorcycle when they were "opposite practically."

The defendant who was seated on the left hand side driving his car, testifies that he was driving on his right hand side of the road, that Dyer was about one hundred and fifty feet away when the witness came to the top of the hill, and was coming on Tardif's side of the road.

"Q. What did he do if anything about turning out before he got to you, what did Mr. Dyer do, if anything, about turning out before he got to you?

"A. I thought from what I saw that he was trying to go to his right side of the road, but he seems to have struck the edge of the road and that bounced him back in front of me, on me, on me.

"Q. Yes. What part of your machine did his motorcycle hit? A. The rear mud guard."

He points out a dent on the *rear left* mud guard as the place where Dyer struck his car.

Albert Tardif, the defendant's son, who was sitting immediately behind his father, testifies that when their machine was on the top of the hill, he first saw Dyer one hundred or one hundred twenty-five feet away coming on his father's right hand.

"Q. How did Mr. Dyer strike your father's car?

"A. Well, what I can see, when I see him he was coming on my father's right side and when he saw . . . . had his head about this way, a little low, when I see him, and when he lift up his head

he try to take his own side, and then he start to go in the ditch there and he bring his wheel back, not take the ditch, and he hit the mud guard on the back side."

He says that Dyer ran seventy-five feet before he fell and his father ran another seventy-five feet. On cross examination he testified:

"Q. So you didn't see the motorcycle strike the car?

"A. I saw him going, see when he came around the machine there, I saw him going, coming pretty close to the car, but I didn't see him hitting the car.

"Q. You heard some noise?

"A. I heard some noise, I thought it was a rock first, and then after I had seen he was coming so close to my father's machine, I looked behind, that is why I told my father to stop, see.

"Q. Now, Mr. Tardif, after you looked behind, just what did you see as you looked behind after you saw he apparently struck the car?

"A. I saw Mr. Dyer going on his motorcycle and his wheel turning around.

"Q. Which way, Mr. Tardif? A. On Mr. Dyer's right, and he fell down with his motorcycle.

"Q. Fell down where? A. Well, it seems to me to be a little beside of the road.

"Q. On his right? A. On his right."

Mrs. Albert Tardif was sitting on the front seat at the right of her father-in-law, with a ten-months old baby in her arms. She testifies that Dyer hit her father-in-law's automobile "in back," and that she did not see him after he struck it.

The issue was to be decided by the weight which the jury should give to the testimony of the witnesses, which was flatly contradictory. It was a question of credibility, and the jury might well regard the version of the collision given by the defendant and his witnesses as entirely inadequate to account for the condition of the motorcycle after the collision, and the very serious injuries which plaintiff received.

We perceive no reason for interfering with their conclusion. Motion overruled. *G. R. Grau and D. F. Snow,* for plaintiff. *F. A. Morey,* for defendant.